**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED

*October 21, 2020*

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | Criminal No. **20-520** |
| v. | § § | **UNDER SEAL** |
| LOISTEEN PHILLIPS, | § § § § | |
| Defendant. | § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1. **Medicare.** The Medicare Program ("Medicare") was a federal health care program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. Health care providers that provided services to Medicare beneficiaries were required to apply for and obtain a "provider number". Part of this application process required that the health care providers certify that they understand and will abide by the federal laws and regulations governing their participation in Medicare, including a specific understanding of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7(b).

4.     A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider that ordered the services.

5.     Part A of the Medicare program covered eligible home health services provided by a participating home health agency ("HHA") provided to Medicare beneficiaries who were confined to their homes and had a medical need for skilled nursing care, physical therapy, speech therapy, or an ongoing need for occupational therapy. Claims for qualifying home health services were typically reimbursed in full to the HHA based on contract rates determined by Medicare.

6.     Upon enrollment, Medicare providers were issued a provider manual that describes the requirements to participate as a provider in the Medicare program. Providers also periodically receive newsletters advising them of the additional requirements for participation and instructions on what services are or are not covered by Medicare.

7.     Since October 2000, Medicare compensation to home health care agencies has been based on the Prospective Payment System (PPS). Under this system, Medicare pays a home health care agency a base payment, which is adjusted based on the severity of the beneficiary's health condition and care needs. The PPS payment provides home health care agencies with payments for each 60-day episode of care for each beneficiary. If the beneficiary is still eligible for home health care after a home health episode, they may be recertified for another 60-day home health episode. There is no limit to the number of home health episodes

that a beneficiary may receive, so long as the beneficiary is still eligible for home health services.

8. CMS did not directly pay Medicare Part A claims submitted by Medicare certified HHAs. CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Texas, CMS contracted with Medicare Administrative Contractors ("MACs"), including Trailblazer Health Enterprises ("Trailblazer") and Novitas Solutions ("Novitas"), to administer Part A HHA claims. As administrator, MACs received, adjudicated, and paid claims submitted by HHA providers under the Part A program for home health services.

9. According to 42 Code of Federal Regulations (CFR) section 409.42, for home health services to be covered and therefore compensable by Medicare, all of the following eligibility requirements must be met:

    a. The beneficiary must be confined to the home or an institution that is not a hospital (i.e., homebound).

    b. The beneficiary must be under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care (described in Paragraph 13, below);

    c. The beneficiary must be in need of skilled services such as intermittent skilled nursing services, physical therapy, speech-language pathology services, or continuing occupational therapy services.

        i. More specifically, in section 409.44, where a service can be safely and effectively performed (or self-administered) by non-licensed staff without the direct supervision of a nurse, the service cannot

be regarded as a skilled service even if a nurse actually provides the service.

    d.    The beneficiary must be under a plan of care that meets the requirements specified in section 409.43.

    e.    The home health services must be provided by, or under arrangements made by, a participating home health care agency.

10.    **Homebound Status**: In order for a patient to be eligible to receive covered home health services under both Medicare Part A and Part B, the law required that a physician certify that the patient was confined to the home. The condition of the patients should be such that there existed a normal inability to leave home and, consequently, leaving home required a considerable and taxing effort. If a patient did in fact leave the home, the patient may nevertheless be considered homebound if the absences from the home were infrequent, or for periods of relatively short duration, or were attributable to the need to receive health care treatment.

11.    **OASIS and Plan of Care**: To determine the proper level of care for a beneficiary and ultimately to help determine the amount of payment the provider will receive, Medicare required that home health care agencies perform a patient-specific, comprehensive assessment that accurately reflected the patient's current health and provided information to measure his progress. In making this assessment, home health care agencies were required to use a tool called the Outcome and Assessment Information Set (OASIS).

12.    With limited exceptions, the OASIS assessment must have been completed by a Registered Nurse (RN). The standard OASIS form was a detailed checklist that the nurse examining the prospective patient completed. The form was detailed and comprehensive,

covering: clinical record items identifying the agency, the patient, the referring physician, and the period of care; demographics and patient history; living arrangements, including an evaluation of safety and sanitary conditions of the home; supportive assistance from co-habitants, relatives, and other care-givers; separate assessments of every area of the body, external and internal; mental and psychological status; functional limitations; activities of daily living such as bathing, grooming, shopping, reading and writing; permitted activities; medications and allergies; medical appliances and equipment; and therapy, teaching, training, and skilled care needs. The OASIS also contained spaces for a written analysis of findings; a projection of the number and type of treatments needed; and a description of goals, rehabilitation potential, and discharge plans for the beneficiary.

13. The OASIS information was then used to create a Plan of Care ("Form 485"). The Plan of Care specified the frequency of home visits and described the services to be provided to the beneficiary. The beneficiary's physician must sign the Form 485, certifying that the patient is confined to the home and needs intermittent skilled care. Further, the physician certified that the physician is caring for the beneficiary and that the services set forth on the plan of care are authorized by the physician.

14. **Provision of Home Health Services**: Following the initial assessment, and based upon either completion of the Form 485 or a verbal order from the doctor (later confirmed by a signed Form 485), nurses, physical therapists, and/or other home health professionals visited the patient based on the frequency ordered by the doctor and recorded the visit in progress notes.

15. **Documentation**: Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical

assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the home health agency. When they filled out Medicare enrollment applications, providers must identify all locations where patient records will be kept. Among the written records required to be maintained are:

    a. the Plan of Care, which includes the physician order for home health care, diagnoses, types of services/frequency of visits, prognosis/rehabilitation potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and physician signature;

    b. the OASIS start-of-care form;

    c. a signed certification statement by an attending physician certifying that the patient is under the physician's care, is confined to his or her home, and needs the planned home health services; and

    d. medical records of each visit made by a nurse, therapist, or home health aide to a beneficiary, describing, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition.

16. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

17. **Medicaid**. The Texas Medicaid program (Medicaid) was a state program, jointly funded by the State of Texas and the federal government. Medicaid was administered by the Texas Health and Human Services Commission. Medicaid provided medical and related services to families with dependent children and aged, blind, or disabled individuals whose income and other financial and economic resources were insufficient to allow them to meet the cost of necessary medical services. Individuals eligible under the Medicaid program were referred to as Medicaid "clients". Medicaid was a "health care benefit program" as defined by 18 U.S.C. § 24(b).

18. Among the types of reimbursable medical assistance available to Medicaid clients were office visits, diagnostic testing, prescription drugs, and durable medical equipment.

## RELEVANT INDIVIDUALS AND ENTITIES

19. Home Health Agency A was a Texas corporation doing business in Houston, Texas. Home Health Agency A purportedly provided home health services to Medicare beneficiaries from in or around January 2012 through in or around December 2019.

20. Individual 1 is the owner of Home Health Agency A. Individual 1 owned and operated Home Health Agency A from in and around April 2011 through in or around December 2019.

21. **LOISTEEN PHILLIPS**, a resident of Harris County, Texas, was a patient recruiter for home health agencies, including Home Health Agency A and Individual 1.

## COUNT 1

### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349)

22. Paragraphs 1 through 21 are realleged and incorporated by reference as if fully set forth herein.

23. From in or around January 2012 through in or around December 2019, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendant

**LOISTEEN PHILLIPS**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

24. It was a purpose of the conspiracy for Defendant **LOISTEEN PHILLIPS** and her co-conspirators, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by (a) submitting and causing the submission of false and fraudulent Part A claims to Medicare for home health services, and (b) diverting and causing the diversion of the proceeds of the fraud for the personal use and benefit of the Defendant and her co-conspirators.

## Manner and Means of the Conspiracy

The manner and means by which the Defendant **LOISTEEN PHILLIPS** and her co-conspirators sought to accomplish the purposes and objects of the conspiracy included, among other things, the following:

25. Individual 1 maintained a Medicare provider number for Home Health Agency A which Individual 1 used to submit and cause to be submitted claims to Medicare for home health services that were not medically necessary, not provided, or both.

26. Individual 1 paid and caused the payment of kickbacks to **LOISTEEN PHILLIPS** in exchange for referring Medicare beneficiaries to Home Health Agency A for home health services.

27. Home Health Agency A billed Medicare for home health services that were not provided to those beneficiaries, were not medically necessary for those beneficiaries, or both.

28. **LOISTEEN PHILLIPS** and her coconspirators paid and caused the payment of kickbacks, often in cash, to Medicare patients in exchange for the patients' allowing Home Health Agency A to use their Medicare information to bill Medicare for home health services.

29. **LOISTEEN PHILLIPS** referred Medicare beneficiaries to Home Health Agency A for admission and re-admission to home health services even though they did not qualify for such services under Medicare.

30. From in or around January 2012 to in or around December 2019, Individual 1, Home Health Agency A, and their co-conspirators, known and unknown to the Grand Jury, submitted or caused the submission of claims to Medicare for approximately $3.9 million for home health services purportedly provided by Home Health Agency A to beneficiaries referred by

defendant **LOISTEEN PHILLIPS** that were not medically necessary, not provided, or both. Medicare paid approximately $1.5 million on those claims.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4

### Health Care Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

31.     Paragraphs 1 through 30 are re-alleged and incorporated by reference as if fully set forth herein.

32.     On or about the dates specified below, in the Houston Division of the Southern District of Texas and elsewhere, Defendant,

### LOISTEEN PHILLIPS

aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, as set forth below:

| Count | Medicare Beneficiary | Approx. Dates of Service | Claim Number | Description of Services Billed | Approx. Medicare Payment to Home Health Agency A |
|---|---|---|---|---|---|
| 2 | E.C. | 6/29/17 thru 8/27/17 | 21724403253407TXR | Home Health | $1,734.27 |
| 3 | J.R. | 8/1/17 thru 9/29/17 | 21727504142207TXR | Home Health | $3,187.29 |

| 4 | L.P. | 8/27/17 thru 10/25/17 | 21729902232007TXR | Home Health | $1,734.27 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 5
### Conspiracy to Defraud the United States and to
### Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

33. Paragraphs 1 through 32 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

34. From in and around January 2012 through in and around December 2019, the exact dates being unknown, in the Houston Division of the Southern District of Texas, and elsewhere, the Defendant,

**LOISTEEN PHILLIPS**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

   a. to defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare, and to commit certain offenses against the United States, that is:

   b. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under

11

      a Federal health care program, that is, Medicare; and in return for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and

c. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

35. It was a purpose of the conspiracy for the Defendant **LOISTEEN PHILLIPS**, and her co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom Home Health Agency A submitted claims to Medicare.

### Manner and Means of the Conspiracy

The manner and means by which the Defendant **LOISTEEN PHILIPS,** and her co-conspirators sought to accomplish the purpose and objects of the conspiracy included, among other things, the following:

36. Paragraphs 25 through 30 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

## Overt Acts

37. In furtherance of the conspiracy, and to accomplish its objects and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

   a. On or about November 20, 2017, Individual 1 paid or caused the payment of approximately $1,600 to Defendant **LOISTEEN PHILLIPS** in exchange for sending Medicare beneficiaries to Home Health Agency A for home health services.

   b. On or about February 28, 2018, Individual 1 paid or caused the payment of approximately $2,000 to Defendant **LOISTEEN PHILLIPS** in exchange for sending Medicare beneficiaries to Home Health Agency A for home health services.

   c. On or about April 23, 2018, Individual 1 paid or caused the payment of approximately $2,000 to Defendant **LOISTEEN PHILLIPS** in exchange for sending Medicare beneficiaries to Home Health Agency A for home health services.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
**(18 U.S.C. § 982(a)(7))**

38. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendant **LOISTEEN PHILLIPS** that upon conviction of any Counts in this Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses is subject to forfeiture.

### Money Judgment and Substitute Assets

39. Defendant **LOISTEEN PHILLIPS** is notified that upon conviction, the United States will seek the imposition of a money judgment against her. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of each Defendant in substitution up to the amount of the money judgment against that Defendant.

A TRUE BILL

Original Signature on File
FOREPERSON

RYAN PATRICK
UNITED STATES ATTORNEY

*Kathryn Olson*
KATHRYN OLSON
Special Assistant United States Attorney
U.S. Attorney's Office for
the Southern District of Texas